FILED

97 DEC 30 AM 10: 41

CLERK, U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA, FLORIDA

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**GEORGE MICHAEL GUSLER,**

**Plaintiff,**

**v.**

**PRO DIRECT RESPONSE CORP., d/b/a PRO DIRECT INTERVIEWING CORPORATION OF FLORIDA,**

**Defendant.**

**Case No. 97-2766-CIV-T-26B**

# DEFENDANT'S MOTION TO DISMISS COUNT III OF PLAINTIFF'S COMPLAINT

**COMES NOW** Pro Direct Response Corp. ("Pro Direct"), defendant herein, by and through its undersigned counsel, pursuant to Rule 12(b)(6), FED. R. CIV. P., and hereby moves to dismiss Count III of plaintiff's Complaint. As more fully set forth in the following memorandum of law, plaintiff may not pursue a Florida Private Whistleblower Act, §§ 448.101-105, FLA. STAT. ("Whistleblower Act") claim based on retaliation for opposing practices made unlawful under Title VII and the Florida Civil Rights Act because both of these statutes provide their own, specific anti-retaliation provisions.



## SUPPORTING MEMORANDUM OF LAW

## I.

## STATEMENT OF THE CASE

Plaintiff alleges that defendant Pro Direct discriminated and retaliated against him in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*; 42 U.S.C. § 1981; the Florida Civil Rights Act of 1992, §§ 760.01-760.11, FLA. STAT. ("FCRA"); and the Whistleblower Act. Plaintiff seeks declaratory, injunctive, compensatory, punitive and equitable relief and attorneys' fees and costs under these statutes. More specifically, the plaintiff alleges that he was retaliated against by Pro Direct because he disclosed or threatened to disclose equal employment opportunity violations by Pro Direct (Complaint, ¶ 23), provided information to an employee regarding an investigation about an equal employment opportunity complaint (Complaint, ¶ 25), and objected to continuing alleged violations of federal and state equal employment opportunity laws ( Complaint, ¶ 26).

## II.

## ARGUMENT

### A. Introduction

In Count III of his Complaint, plaintiff seeks recovery under the Whistleblower Act because he was allegedly retaliated against for objecting to purported violations of Title VII and the FCRA. However, as both Title VII and FCRA have their own anti-retaliation provisions, Count III is barred under both Supreme Court and federal precedent.

Courts have consistently held that Title VII and analogous state statutes provide the exclusive remedial framework for claims that employees have been retaliated against for opposing practices made unlawful under these statutes. They have reasoned that allowing plaintiffs to utilize other theories of liability would nullify the specific and detailed administrative and judicial procedures incorporated into these statutes. In addition, courts have found that because the right to be free from retaliatory behavior for opposing unlawful practices under these statutes is a right which was created solely by these statutes, they provide the exclusive avenue of relief for violations of that right.

**B. The Statutory Framework**

In pertinent part, Title VII provides that "[I]t shall be an unlawful employment practice for an employer to discriminate against any of his employees...because he has opposed any practice made an unlawful employment practice by this subchapter." Section 704(a) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a). The FCRA contains similar language, "[I]t is an unlawful employment practice for any employer . . . to discriminate against any person because that person opposed any practice which is an unlawful employment practice under this section. . . ." § 760.10(7), FLA. STAT. Accordingly, both Title VII and the FCRA provide their own, specific provisions that govern the conduct alleged in Count III of plaintiff's complaint.

**C. The Retaliation Provisions Of Title VII Preempt Other Federal And State Law Claims Which Seek Redress For Alleged Retaliatory Conduct**

The seminal case which governs this issue is *Great Am. Federal S. & L. Ass'n v. Novotny*, 442 U.S. 366, 99 S.Ct. 2345 (1979). In *Novotny*, plaintiff alleged that he was terminated due to his support for female employees allegedly discriminated against by their employer. He filed a complaint with the EEOC under Title VII and then initiated a lawsuit against his employer and its directors in federal district court. Plaintiff sought damages under 42 U.S.C. § 1985(3). The Third Circuit held that plaintiff, as a male injured as a result of conspiracy against women, had standing to bring suit under § 1985(3) and Title VII could be the source of a right asserted in an action under § 1985(3). *Novotny v. Great Am. Federal S. & L. Ass'n*, 584 F.2d 1235, 1262 (3rd Cir. 1978).

On appeal, the Supreme Court addressed whether rights created by Title VII could be asserted within the framework of 42 U.S.C. § 1985(3). The Supreme Court answered this question in the negative. The Court held that if a violation of Title VII could be asserted through § 1985(3), a plaintiff could avoid the detailed and specific administrative and judicial processes provided by Title VII. *442 U.S.* at 376. The Court concluded that:

> [U]nimpaired effectiveness can be given to the plan put together by Congress in Title VII only by holding that deprivation of a right created by Title VII cannot be the basis for a cause of action under § 1985(3).

*Id.* at 378.

Following the Supreme Court's pronouncement in *Novotny*, federal courts have held that plaintiffs may not seek relief under other federal laws for retaliatory conduct falling squarely

within the scope of the anti-retaliation provision of Title VII, § 704(a). For example, in *Moche v. City University of New York*, 781 F. Supp. 160 (E.D.N.Y. 1992), the court dismissed plaintiff's § 1983 claims based upon retaliatory behavior for participation in a Title VII lawsuit, holding that "plaintiff's retaliation claims cannot be brought under § 1983 because they could have been remedied here exclusively through Title VII." *Id.* at 168. The court reasoned that "Title VII provides an exclusive remedy for rights created under Title VII, while § 1983 provides a remedy for substantive rights independent of Title VII . . ." *Id.* Because freedom from retaliation for opposing conduct made unlawful under Title VII is a right which was created under Title VII and Title VII provides a complete remedy for such retaliatory behavior, the court found that plaintiff could not proceed under a different statute, (and/or?) to seek relief for the same retaliatory behavior made unlawful under Title VII.

Similarly, in *Long v. Laramie County Community College Dist.*, 840 F.2d 743 (10th Cir. 1988), the Tenth Circuit affirmed the district court's summary judgment for the defendants on plaintiff's retaliation claims under §§ 1983 and 1985. The plaintiff had brought suit under Title VII and §§ 1983 and 1985, alleging, *inter alia*, retaliation for protesting sexual harassment. In upholding summary judgment, the court reasoned that "a theory of liability under federal law for retaliatory conduct by these four defendants does not give rise to a viable claim under § 1985, and instead supports only a Title VII claim." *Id.* at 752 (emphasis supplied). Further, the court found that retaliatory actions for opposing conduct made unlawful under Title VII would not support a § 1983 claim, but only a Title VII cause of action.

The Tenth Circuit subsequently elaborated upon its reasoning in *Long* by stating that:

> the enforcement provisions expressly created in Title VII provide the exclusive remedy for employment discrimination suits premised

> solely on its violation. . . . The precisely drawn, detailed enforcement structure of [Title VII] must be deemed to preempt [§ 1983].

*Polson v. Davis*, 895 F.2d 705, 710 (10th Cir. 1990). *See also Tafoya v. Adams*, 816 F.2d 555, 558 (10th Cir. 1987) ("the right to be free of retaliatory discharge provided for by Title VII does not entitle one to relief under 1983 or 1985(3)").[1]

Federal courts have also applied the preemptive effect of Title VII to preclude the assertion of state law claims based upon retaliatory conduct prohibited by Title VII. In *Brudnicki v. General Elec. Co.*, 535 F. Supp. 84 (N.D. Ill. 1982), the plaintiff attempted to vindicate his 704(a) rights under state law, alleging, *inter alia*, that defendant discharged him in retaliation for his resistance to hiring and promoting female employees on the basis of sex. Plaintiff's based his claim solely on the common law retaliatory discharge doctrine of Illinois which recognizes a cause of action when an employee is discharged in retaliation for his activities in contravention of clear public policy. Granting defendant's motion to dismiss this claim, the court held that, because Title VII specifically provides that it is an unlawful employment practice to fire an employee in retaliation for his opposition to unlawful employment practices, plaintiff could not pursue an independent cause of action. The court reasoned that allowing plaintiff to pursue such an independent claim would render the remedies provided by

---

[1] Several circuits have followed the Tenth Circuit and have held that Title VII preempts other federal statutes, providing the exclusive remedy for retaliation made unlawful under that statute. *See Johnston v. Harris County Flood Control Dist.*, 869 F.2d 1565 (5th Cir. 1989) (Title VII provides the exclusive remedy for a violation of its own terms); *Irby v. Sullivan*, 737 F.2d 1418, 1429 (5th Cir. 1984) (Title VII preempts § 1983); *Day v. Wayne County Bd. of Auditors*, 749 F.2d 1199 (6th Cir. 1984) (same); *Cleghorn v. Herrington*, 813 F.2d 992, 995 (9th Cir. 1987) (plaintiff may not "use the APA to assert what is in effect a Title VII claim...because it would allow him to circumvent, in direct contravention of congressional intent, the numerous procedural and substantive requirements of Title VII.").

federal employment law meaningless because plaintiffs could avoid their obligations to pursue administrative remedies. *Id.* at 88. *See also Wyrick v. TWA Credit Union*, 804 F. Supp. 1176, 1182 (W.D. Mo. 1992) (common law retaliatory discharge claim for reporting violations of Title VII dismissed because Title VII contains its own remedial scheme); *Ferragamo v. Signet Bank/Maryland*, 7 IER Cases 1158 (D. Md. 1992) (tort claim for retaliatory discharge preempted by Title VII, where violation of public policy alleged is contained in Title VII) (copy attached for the convenience of the Court).

### D. The Retaliation Provisions Of State Equal Employment Opportunity Statutes Are Likewise Preemptive Of Separate State Law Claims Which Seek Redress For Alleged Retaliatory Conduct

Federal courts have applied the rationale developed in *Novotny* to conclude that state equal employment opportunity statutes have the same preemptive effect on state law claims based on alleged retaliatory conduct. For example, in *Polson v. Davis*, 895 F.2d 705, 710 (10th Cir. 1990), the Tenth Circuit held that plaintiff could not maintain a claim for the tort of retaliatory discharge because the Kansas Acts Against Discrimination ("KAAD") provided an adequate state remedy for those who are retaliated against for objecting to discriminatory behavior. The KAAD provided the exclusive remedy for retaliatory behavior in this context. *Cf. Traggis v. St. Barbara's Greek Orthodox Church*, 851 F.2d 584, 591 (2nd Cir. 1988) (§ 1985(3) cannot be used to remedy an alleged private conspiracy to violate the Connecticut Human Rights and Opportunities Act --- allowing such a claim would permit plaintiffs to completely bypass the detailed administrative process of that statute).

In *Brudnicki*, in addition to its Title VII reasoning, the court found that because plaintiff's alleged retaliatory discharge could be vindicated through the express provisions of the Illinois Human Rights Act, plaintiff could not pursue a common law cause of action. *Brudnicki*, 535 F. Supp. at 89) As with its Title VII rationale, the court found that such a claim would render the state law administrative procedures meaningless. Likewise, in *Talley v. Wash. Inventory Service*, 9 IER Cases 1729 (7th Cir. 1994) (copy attached for the convenience of the Court), the Seventh Circuit upheld the district court's dismissal of plaintiff's retaliatory discharge complaint for failure to state a claim. The court held that plaintiff could not pursue a common law retaliatory discharge claim because the Illinois Human Rights Act provided the exclusive remedy for such a claim. "[I]n light of the Illinois Human Rights Act, courts have no jurisdiction to hear <u>independent</u> actions for alleged human rights violations. *Id.* at 1731 (Emphasis supplied).

State courts have followed this precedent and underlying rationale. In a case closely analogous to the one at bar, *Lorick v. York Technical College*, 10 IER Cases 697 (S.C. Ct. Common Pleas 1994) (copy attached for the convenience of the Court), the plaintiff brought a claim under the South Carolina Whistleblower Act alleging that defendant retaliated against her because she complained about employment discrimination to the South Carolina Human Affairs Commission. The court granted defendant's motion to dismiss this claim, reasoning that plaintiff's "exclusive state law remedy against the [defendant] for such retaliation is under the South Carolina Human Affairs Law." *Id.* at 699. The court held that the Human Affairs Law contained detailed and comprehensive procedures designed to promote conciliation and mediation and that to permit plaintiff to bypass these procedures "by casting a complaint of employment discrimination in terms of 'whistleblowing' would . . .defeat the General Assembly's purpose

of resolving such claims through the [statute's] procedure . . ." *Id.* *See also Ramey v. Highways and Public Trans. Dept.*, 7 IER Cases 1024, 10 (S.C. Ct. Common Pleas 1992) (plaintiff's claim under South Carolina Whistleblower's Act that employer retaliated against her because she complained of sexual harassment is barred by the Human Affairs Law) (copy attached for the convenience of the Court).[2]

**E. Courts Have Applied Well-Settled Rules Of Statutory Construction To Preempt Whistleblower Claims Based On Alleged Retaliatory Acts Otherwise Covered By Equal Employment Opportunity Laws**

In addition to promoting the mediation and administrative processes that are integral to Title VII, courts also have applied standards rules of statutory construction in determing that retaliation provisions are preclusive of more general statutory whistleblower-type claims. It is a well-settled rule of statutory construction that a specific statute takes precedence over a general statute when both cover the same conduct. *See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 112 S. Ct. 2031 (1992); *Busic v. U.S.*, 446 U.S. 398 (1980); *Brown v. GSA*, 425 U.S. 820, 834 (1976) ("the Court has held that a precisely drawn, detailed statute preempts more general remedies"); *U.S. v. Louwsman*, 970 F.2d 797 (11th Cir. 1992), *cert. denied*, 507 U.S. 959, 113 S. Ct. 1383 (1993); *Nitzberg v. C.I.R.*, 580 F.2d 357 (9th Cir. 1978).

---

[2] *See also Warren v. K Mart Corp.*, 8 IER Cases 59 (D. Kan. 1992) (common law retaliatory discharge claim preempted by the KAAD) (copy attached for the convenience of the Court); *Retherford v. AT&T Communications*, 844 P.2d 949, 961, 8 IER Cases 405, 415 (Utah 1992) (the Utah Anti-Discriminatory Act preempts common law causes of action for a discharge in retaliation for complaints of employment discrimination) (copy attached for the convenience of the Court); *Geary v. Visitation B.V.M. School*, 8 IER Cases 251, 253 (E.D.Pa. 1992) (Pennsylvania Human Relations Act preempts common law claim for retaliatory discharge in violation of public policy) (copy attached for the convenience of the Court).

Thus, for example, in *Lorick*, the court stated that "[t]his Court's conclusion that the [Human Affairs Law] provides the exclusive state law remedy against employers for complaints of retaliation for opposing employment discrimination is bolstered by . . . the rule of statutory construction that the specific controls the general." *Lorick*, 10 IER Cases at 699 (emphasis added). The court held that the "[Human Affairs Law] is a statute that applies specifically to claims of employment discrimination -- including retaliation for opposing employment discrimination. . . . The subsequently enacted Whistleblower Act, in contrast, applies generally to claims of retaliation for reporting or exposing violations of 'any state or federal law or regulation.'" *Id.* In conclusion, the court opined that it did not believe that "the General Assembly intended to eviscerate [the Human Affairs Law] . . . by enacting the Whistleblower Act," and that "the Human Affairs Law cannot be the subject of a Whistleblower Act claim." *Id.* at 699-700.

In *Smith v. Travelers Mortgage Services*, 699 F. Supp. 1080 (D. N.J. 1988), the court construed a similar "whistleblower" statute and held that because the statute did not protect the filing of an EEOC claim, plaintiff could only pursue a Title VII cause of action. *Id.* at 1083. Plaintiff filed a charge with the EEOC, alleging sex discrimination on the part of defendant by denying her a promotion. Subsequently, the defendant terminated plaintiff while she was on maternity leave. Plaintiff alleged, *inter alia*, that she was terminated in retaliation for her EEOC charge and sought relief under both Title VII and the New Jersey Conscientious Employee Protection Act ("CEPA"). The CEPA provides general protection against retaliatory behavior based upon an employee's opposition to unlawful practices. The court held that the statute did not apply to plaintiff's EEOC charge because it was meant to protect whistleblowing activities

such as reporting workplace safety violations and criminal conduct, not the filing of an EEOC charge. *Id.* Further, the court found that because the discrimination claim was already protected by Title VII, the Legislature did not intend it to be protected by the statute. Concluding, the court found that "the alleged discharge of an employee for filing an individual claim with the EEOC is not within the activities protected by the [statute]." *Id.* *See also* *Fitzgibbon v. Sanyo Securities America, Inc.*, 9 IER Cases 1229, 1233 (S.D.N.Y. 1994) (New York whistleblower law does not protect opposition to unlawful activities which do not pose an actual and substantial danger to the public health) (copy attached for the convenience of the Court).

**F. Plaintiff's Whistleblower Act Claim Is Preempted By Title VII And The FCRA Because It Is Based On Alleged Retaliatory Acts Covered By These Laws**

Based upon the foregoing authority and the public policy considerations underlying this authority, plaintiff may not maintain his cause of action against Pro Direct under the general provisions of the Whistleblower Act. There are two compelling reasons for this conclusion.

First, as is recognized by the U.S. Supreme Court and by numerous lower federal and state courts, legislative bodies such as Congress and the Florida Legislature have enacted detailed, comprehensive statutory processes to ensure the fair and equal treatment of employees in the workplace. Central to the enforcement and vindication of the statutory protections afforded by Title VII and the FCRA are detailed administrative and investigative procedures, which in turn are coupled with additional mediation and conciliation processes. Furthermore, under both state and federal law, state and federal agencies are given the authority to initiate their own claims against private and public employers - enforcement actions which are in

addition to the private rights of action secured by these statutes. Finally, the integrity of the investigative and enforcement processes are protected by strict prohibitions against retaliatory conduct against employees by employers.

Courts appreciate and recognize that these processes would be trumped if individuals could evade them by asserting a retaliation claim through some other statutory or common law vehicle. As a consequence, federal and state courts have simply closed the door on this avenue for asserting a claim based upon alleged retaliatory conduct. Instead, an aggrieved plaintiff must avail himself of the detailed administrative processes mandated by the legislative process. Failure to do so precludes a plaintiff from pursuing such claims.

To allow a plaintiff such as Gusler to pursue a claim under the Florida Private Whistleblower Act to address Title VII and FCRA violations would impair the effectiveness of these statutes and would establish a precedent that would allow plaintiffs to bypass the strict administrative procedures established under Title VII and the FCRA. As instruments to conciliate and resolve retaliation claims, Title VII and the FCRA would become dead letters. As the statutes which created the right to be free from the retaliatory conduct of which plaintiff complains, Title VII and the FCRA must remain the exclusive remedial framework to address any alleged violation of this right. The bottom line is that Gusler cannot bring a separate claim under the Whistleblower Act as long as the essential elements of his claim are rooted in allegations of retaliatory conduct that is otherwise prohibited Title VII and the FCRA. In this case, Gusler's entire Whistleblower claim is based on alleged protected conduct that falls clearly and unambiguously with the ambit of § 704(a) of Title VII and § 760.10 of the FCRA. Under such circumstances, Gusler's Florida Whistleblower Act claim must be dismissed with prejudice.

Gusler's Florida Whistleblower Act claim is also barred pursuant to standard rules of statutory construction. The FCRA directly address the claims made by plaintiff in Count III while the Whistleblower Act is a more sweeping statute addressed to a wide variety of retaliatory behavior. Indeed, the Florida Legislature never intended the Whistleblower Act to be applied to such factual circumstances as alleged by plaintiff. By providing specific protection for opposing violations of the FCRA, the legislature clearly meant for plaintiffs to pursue their remedies under the FCRA. Further, there is no indication that the Legislature intended the Whistleblower Act to protect opposition to employment discrimination. Rather, the legislative history of the Whistleblower Act makes clear that it was enacted to protect true "whistleblowing" activities, such as testifying or reporting about public health violations and other such harms. As opposition to employment discrimination is already protected under Title VII and the FCRA, the Legislature meant the Private Whistleblower Act to apply to other retaliatory situations.

In support of the latter argument, the Substantive Analysis Section of the House of Representatives Committee On Employee And Management Relations Final Bill Analysis & Economic Impact Statement (attached hereto as Exhibit "A") states that the Private Whistleblower Act was intended to confer upon private employees the same protection afforded public employees under the Whistle-blower's Act, § 112.3187, FLA. STAT. *See also Walsh v. Arrow Air Inc.*, 629 So.2d 144, 147 (Fla. 3d DCA 1993) ("In 1991, the Whistle-blower protection was expanded to cover private sector employees . . ."). As recognized by this statement, the original Whistleblower's Act contained provisions prohibiting employers from retaliating against an employee who has disclosed information concerning a violation, or suspected violation "of any federal, state, or local law, rule or regulation that creates or presents

a substantial and specific danger to the public's health, safety, and welfare." (Emphasis supplied). Accordingly, the Florida Legislature only intended the Private Whistleblower Act to apply to those situations in which an employer's violation threatens the public's health, safety, and welfare. Clearly, the alleged violations of Pro Direct carry with them no danger to the public's health, safety and welfare as contemplated by the Florida Legislature. There simply is no suggestion or indication that the Florida Legislature intended this Act to apply to opposition to employment discrimination. Nor should there be, since the Florida Legislature precisely, clearly and unambiguously protected employees from retaliatory conduct by enacting the FCRA.

## III.

## CONCLUSION

In conclusion, Pro Direct respectfully submits to this Court that Gusler may not use the remedial scheme of the Florida Private Whistleblower Act to address an alleged deprivation of rights guaranteed by Title VII and the FCRA. In this case, as in *Novotny* and its progeny, plaintiff's separate claim under Florida's Whistleblower Act must be dismissed with prejudice.

Respectfully submitted,

Peter W. Zinober
Florida Bar No. 121750

Edwin J. Turanchik
Florida Bar No. 651893
ZINOBER & McCREA, P.A.
201 East Kennedy Boulevard, Suite 850
Tampa, Florida 33602
(813)224-9004 - Telephone
(813)223-4881 - Facsimile
Attorneys for Defendant
Pro Direct Response Corp.

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing Defendant's Motion to Dismiss Count III of Plaintiff's Complaint has been furnished by regular U.S. Mail, this 29th day of December, 1997, to the following:

James A. Martin, Jr., Esquire
Sandra L. Fanning, Esquire
Macfarlane Ferguson & McMullen
625 Court Street, Suite 200
Clearwater, FL 33756

Attorney



# DOCUMENT ATTACHMENTS, OR EXHIBITS NOT SCANNED

## FOR THE FOLLOWING REASON(S):

- ____ PHYSICAL SIZE OF PAPER (LARGER OR SMALLER THAN 8 ½ X 11)
- ____ EXCEEDS PAGE LIMIT
- ____ DOUBLE-SIDED PAGES
- ____ BINDING CANNOT BE REMOVED WITHOUT DAMAGING DOCUMENT
- ____ CASE LAW
- ____ SOCIAL SECURITY RECORD/ANSWER
- ____ TRANSCRIPT
- X OTHER: EXHIBITS NOT SCANNED

# PLEASE REFER TO COURT FILE FOR COMPLETE DOCUMENT